19-763-cv (L)
N.J. Carpenters Health Fund v. NovaStar Mortgage, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2019

(Argued: February 19, 2020        Decided: March 14, 2022)

Docket Nos. 19-763-cv (L), 19-795-cv (Con)

_____

NEW JERSEY CARPENTERS HEALTH FUND, on Behalf of Itself and All Others Similarly Situated,

*Plaintiff-Appellee*,

- v. -

NOVASTAR MORTGAGE, INC., NOVASTAR MORTGAGE FUNDING CORPORATION, SCOTT F. HARTMAN, GREGORY S. METZ, W. LANCE ANDERSON, MARK HERPICH, RBS SECURITIES, INC. f/k/a GREENWICH CAPITAL MARKETS, INC., d/b/a RBS GREENWICH CAPITAL, DEUTSCHE BANK SECURITIES, INC. and WELLS FARGO ADVISORS, LLC f/k/a WACHOVIA SECURITIES LLC,

*Defendants-Appellees*,

FEDERAL HOUSING FINANCE AGENCY, in its capacity as Conservator of the Federal Home Loan Mortgage Corporation, and THE FEDERAL HOME LOAN MORTGAGE CORPORATION,

*Objectors-Appellants*.[*]

_____

Before: KEARSE, PARKER, and BIANCO, *Circuit Judges*.[**]

Objectors Federal Housing Finance Agency ("FHFA"), as conservator of the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and Freddie Mac appeal from a judgment of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*), approving a class action settlement that includes Freddie Mac, with FHFA as its conservator, as a member of the plaintiff settlement class and enjoins FHFA from further pursuing Freddie Mac claims that were at issue in the action. On appeal FHFA, which did not object to its or Freddie Mac's inclusion in the settlement class by the deadline set by the district court, contends principally that the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289,

---

[*] The Clerk of Court is instructed to amend the official caption to conform with the above.

[**] The late Chief Judge Robert A. Katzmann, originally a member of the panel, died and was replaced by Judge Barrington D. Parker.

122 Stat. 2654, *codified at, inter alia*, 12 U.S.C. §§ 4511-4513 and 4617, deprived the district court of subject matter jurisdiction to treat FHFA or Freddie Mac as a member of the settlement class or to rule that conservatorship assets were within the scope of the settlement, *see* 12 U.S.C. § 4617(f). We reject FHFA's interpretation of HERA. However, we conclude for other reasons that the district court's March 8, 2019 prejudgment ruling that FHFA is a member of the settlement class was erroneous; we modify the judgment to reflect correction of that ruling; and as modified, the judgment is affirmed.

Judgment affirmed as modified.

JOEL P. LAITMAN, New York, New York (Christopher Lometti, Michael Eisenkraft, Cohen Milstein Sellers & Toll, New York, New York, on the brief), *for Plaintiff-Appellee*.

ALAN C. TURNER, New York, New York (Simpson Thacher & Bartlett, New York, New York, on the brief *for Defendants-Appellees RBS Securities, Inc., Deutsche Bank Securities, Inc., and Wells Fargo Advisors, LLC*; William F. Alderman, Orrick, Herrington & Sutcliffe, San Francisco, California, on the brief *for Defendants-Appellees NovaStar Mortgage, Inc., NovaStar Mortgage Funding Corporation, Hartman, Metz, Anderson, and Herpich*).

3

CHRISTOPHER P. JOHNSON, New York, New York (Kyle A. Lonergan, H. Lawrence Stierhoff, Drew B. Hollander, McKool Smith, New York, New York, on the brief), *for Objectors-Appellants*.

KEARSE, *Circuit Judge*:

Objectors Federal Housing Finance Agency ("FHFA"), as conservator of the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and Freddie Mac appeal from a judgment of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*), approving a class action settlement that includes Freddie Mac, with FHFA as its conservator, as a member of the plaintiff settlement class and enjoins FHFA from further pursuing Freddie Mac claims that were at issue in the action. On appeal FHFA, which did not object to its or Freddie Mac's inclusion in the settlement class by the deadline set by the district court, contends principally that a section of the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654, *codified at*, *inter alia*, 12 U.S.C. §§ 4511-4513 and 4617, deprived the district court of subject matter jurisdiction to treat FHFA or Freddie Mac as a member of the settlement class or to rule that

4

conservatorship assets were within the scope of the settlement, *see* 12 U.S.C. § 4617(f). For the reasons that follow, we reject FHFA's interpretation of HERA. However, we conclude for other reasons that the district court's March 8, 2019 prejudgment ruling that FHFA is a member of the settlement class was erroneous; we modify the judgment to reflect correction of that ruling; and we affirm the judgment as modified.

## I. BACKGROUND

The present action was commenced in May 2008 by plaintiff New Jersey Carpenters Health Fund ("Carpenters Health Fund") with respect to its purchase in 2007 of certain certificates representing pools of residential mortgage-backed securities ("RMBS") issued by defendants NovaStar Mortgage, Inc., and NovaStar Mortgage Funding Corporation (collectively "NovaStar"), and underwritten by defendants RBS Securities, Inc., Deutsche Bank Securities, Inc., and Wells Fargo Advisors, LLC ("Wells Fargo"), or certain of their affiliated or predecessor companies. The NovaStar certificates at issue were 30-year bonds

5

whose payments of interest, and of principal when due, were supported only by pools of loans and mortgages acquired by NovaStar. The complaint alleged that the registration statement and other offering documents contained untrue statements of material fact, or omitted material facts needed to make those documents not misleading, as to, *inter alia*, the quality of the underlying loans and mortgages. It asserted claims of strict liability against defendants under the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77a *et seq.* The action was brought as a class action on behalf of plaintiff and all persons and entities who prior to May 21, 2008, purchased or otherwise acquired such publicly offered NovaStar certificates pursuant to six identified offerings (the "Offerings").

Freddie Mac is a corporate instrumentality of the United States, created to, *inter alia*, provide and enhance liquidity in the residential mortgage market. In 2006, Freddie Mac had purchased two NovaStar certificates whose total face value exceeded $1 billion.

FHFA is an independent agency of the United States, created by Congress in HERA out of concern for the financial condition of Freddie Mac

and similar government-sponsored entities. As discussed further in Part II.A. below, HERA authorized the Director of FHFA, if necessary, to appoint FHFA as conservator or receiver of such entities, *see* 12 U.S.C. § 4617(a). As conservator, FHFA is empowered to take such steps as would be necessary and appropriate to "preserve and conserve the [entity's] assets and property." *Id*. § 4617(b)(2)(D). On September 6, 2008, FHFA's Director placed Freddie Mac into conservatorship and named FHFA the conservator. By operation of law, FHFA thereupon succeeded to all of Freddie Mac's rights, titles, powers, privileges, books, records, and assets. *See id*. § 4617(b)(2)(A).

A. *Certification of a Class of Buyers of NovaStar Certificates*

In November 2008, notice of the present action was published pursuant to the Private Securities Litigation Reform Act of 1995, notifying eligible purchasers of NovaStar certificates of the right to move to be appointed lead plaintiff. Carpenters Health Fund was appointed lead plaintiff in 2009.

Following several years of pretrial proceedings, Carpenters Health Fund filed the third amended complaint in 2015, which included the allegations

7

described above, and moved for class certification. On November 4, 2016, the district court granted the motion and defined the class as all persons or entities--other than the defendants--

> who purchased or otherwise acquired publicly offered certificates ("Certificates") representing interests in six NovaStar Mortgage Funding Trusts, NovaStar Home Equity Loan ("NHEL") *Series 2006-3*, Series 2006-4, Series 2006-5, *Series 2006-6*, Series 2007-1 and Series 2007-2 (the "NovaStar Trusts" or "Issuing Trusts") prior to May 21, 2008, pursuant or traceable to a single Shelf Registration Statement, dated June 16, 2006, accompanying Prospectus, and Prospectus Supplement filed with the Securities and Exchange Commission (the "SEC") by NovaStar Mortgage Funding Corporation a/k/a NovaStar Certificates Financing Corporation . . . and were damaged thereby.

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, No. 08-CV-05310, 2016 WL 7409840, at *1, *12 (S.D.N.Y. Nov. 4, 2016) ("November 2016 Class Certification Order") (emphases added).

Freddie Mac, by virtue of its purchases in 2006 of bonds in the NovaStar Series 2006-3 and Series 2006-6 Offerings, was included in the class.

In March 2017, Carpenters Health Fund and defendants reached an agreement for settlement of the action. The parties filed in the district court a Stipulation and Agreement of Settlement dated March 8, 2017 ("Stipulation"),

8

which, *inter alia*, (a) called for plaintiff to move for court approval and definition of a settlement class; (b) required defendants to make scheduled payments into escrow if the court gave preliminary approval to the settlement; and (c) required members of the settlement class who wished to participate in the settlement to submit proof-of-claim forms and provide releases. The Stipulation called on the court, if it gave final approval to the settlement, to enter a final judgment that would, *inter alia*, bind all members of the settlement class and would (exclusive of certain specified claims asserting contractual repurchase rights) release all claims that were or could have been asserted in the present action, even those of class members who did not provide releases, unless those class members properly--*i.e.*, as provided by the court (*see* Part I.B. below)--opted to be excluded from the settlement class.

As required by the Stipulation, plaintiff moved, without opposition, for preliminary approval of the settlement, certification of a settlement class, approval of notice to the settlement class, and scheduling of a final approval hearing. The district court granted the motion in full on May 9, 2017. *See Order Preliminarily Approving the Settlement, Certifying Settlement Class, Approving*

9

*Notice to the Class and Scheduling Final Approval Hearing* dated May 9, 2017 ("*May 2017 Preliminary Class Settlement Order*" or "May 2017 Order").

B. *The May 2017 Order's Settlement-Class Certification and Opt-Out Provision*

The May 2017 Order, "pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure," certified the "Settlement Class" which--except for class members who would opt out as allowed in the May 2017 Order--was identical to the class that the court had previously certified in the November 2016 Class Certification Order. *May 2017 Preliminary Class Settlement Order* ¶ 3. The Settlement Class was thus defined as all persons other than defendants

> who purchased or otherwise acquired [NovaStar certificates listed in the November 2016 Class Certification Order] prior to May 21, 2008, . . . and who were damaged thereby, *except* those Persons that timely and validly request exclusion from the class pursuant to and in accordance with the terms herein.

*Id*. (emphasis in original).

The court approved the appointment of Epiq Systems, Inc. ("Epiq"), as Claims Administrator and approved forms of notice to be disseminated by publication and/or given to reasonably identifiable members of the Settlement

Class. It ordered that the Claims Administrator was to send the notice to Settlement Class members by first-class mail not later than 30 days after the settlement amount "is paid to the Escrow Agent pursuant to the Stipulation." *Id*. ¶ 7(a).

The court scheduled a Final Approval Hearing on the proposed settlement for September 13, 2017. *See May 2017 Preliminary Class Settlement Order* ¶ 11. It provided that any member of the Settlement Class could appear at that hearing to advocate its approval or disapproval, except that

> *no Settlement Class Member or any other Person shall be heard or entitled to contest the approval of the terms and conditions of the Settlement*, or, if approved, the Judgment to be entered thereon approving the same, [or other aspects of the settlement] . . . *unless that Settlement Class Member or Person (i) has served written objections, by hand or first-class mail, including the basis therefor*, . . . upon . . . counsel for receipt *no later than fourteen (14) calendar days prior to the Final Approval Hearing.*

*Id*. ¶ 13 (emphases added).

The May 2017 Order set out the requirements for exclusion from the Settlement Class principally as follows:

> 19. *Any requests for exclusion from the Settlement Class* must be submitted for *receipt by the Claims Administrator* no

later than *twenty-eight (28) calendar days prior to the Final Approval Hearing*. Any Settlement Class Member who wishes to be excluded from the Settlement Class must provide (i) name; (ii) address; (iii) telephone number; (iv) identity and original face value of the Certificates purchased (or otherwise acquired) and/or sold; (v) prices or other consideration paid and/or received for such Certificates; (vi) the date of each purchase or sale transaction; and (vii) a statement that the Person wishes to be excluded from the Settlement Class. The request for exclusion must also be signed by the Person requesting exclusion. *All Persons who submit valid and timely requests for exclusion in the manner set forth in this paragraph* . . . shall not share in the distribution of the Net Settlement Fund, and *shall not be bound by the Stipulation or any final Judgment*.

20. *Any Settlement Class Member who does not request exclusion from the Settlement Class in the manner stated in this Preliminary Approval Order* shall be deemed to have waived his, her or its right to be excluded from the Settlement Class, and shall forever be barred from requesting exclusion from the Settlement Class in this or any other proceeding, and *shall be bound by the Settlement and the Judgment, including but not limited to the release of the Released Claims provided for in the Stipulation and the Judgment, if the Court approves the Settlement*.

*Id*. ¶¶ 19-20 (emphases added).

12

C.  *FHFA Objects and Has Freddie Mac Belatedly Attempt To Opt Out*

On August 16, 2017--the deadline set by the May 2017 Order for class members to opt out of the Settlement Class--the report of Claims Administrator Epiq stated that on May 30, 2017, the required form of summary public notice had been published in *The Wall Street Journal* and had been electronically transmitted over the *PR Newswire* (*see* Declaration of Epiq Project Manager Alexander Villanova dated August 15, 2017 ("Villanova Decl. No. 1"), ¶ 11).  Also on May 30, Epiq had sent packets including the court-approved notice of the proposed settlement and proof-of-claim and release forms ("Notice Packages") directly to potential class members by first-class mail.  (*See id.* ¶¶ 2-8.)  Thereafter, additional potential class members were identified, and Epiq also sent Notice Packages to those persons by first-class mail.  (*See id.* ¶¶ 9-10.)

The district court record indicates that only one class member, before the August 16 deadline set by the May 2017 Order, sent the Claims Administrator a request to be excluded from the Settlement Class.  That request was not sent by Freddie Mac or FHFA.

13

1. *FHFA's Jurisdictional Objection and Claimed Lack of Notice*

On August 30, 2017, FHFA and Freddie Mac filed in the district court an objection to the settlement. (*See* Objection of the Federal Housing Finance Agency and the Federal Home Loan Mortgage Corporation to the Proposed Class Action Settlement ("FHFA Objection").) FHFA argued, first, that under HERA, the district court lacked jurisdiction to approve the proposed settlement over the FHFA Objection. As support for that contention, it cited subsection (f) of 12 U.S.C. § 4617, which provides that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator," and subsection (j)(3) of § 4617, which provides that "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA]." (FHFA Objection at 5-6.)

However, FHFA also argued that "Freddie Mac wants simply to opt out of the Proposed Settlement, in accordance with the direction it received from FHFA" and that Freddie Mac had been denied the opportunity to do so because it had not received notice of the proposed settlement. (*Id.* at 6.) Noting that the district court's May 2017 Order had required that the "notice

of settlement be mailed by first-class mail" to reasonably identifiable "members of the Settlement Class," and that "Freddie Mac is undoubtedly such a party," the FHFA Objection stated that "Freddie Mac ha[d] conducted an investigation and concluded that it did not receive the notice required by the Order," that "that mailing never reached Freddie Mac," that "Freddie Mac did not receive this required notice," and that the "Court should reject the Proposed Settlement for this reason alone." (*Id*. (internal quotation marks omitted).)

The FHFA Objection was accompanied by the declaration of an Associate General Counsel in Freddie Mac's General Litigation Department, who was "the primary point person for RMBS matters in the legal department at Freddie Mac" (Declaration of Robert Lawrence dated August 30, 2017 ("Lawrence Decl."), ¶ 16). Lawrence said he had not seen "the Notice of Proposed Settlement in this matter" until August 29 (*id*. ¶ 15) and that "Freddie Mac first became aware of the deadline for requesting exclusion from the settlement class, yesterday, August 29, 2017" (*id*. ¶ 22). Lawrence said he had

> done a reasonable search to determine if Freddie Mac received a copy of any notice of the Proposed Settlement and certification of the settlement class, and it does not appear that Freddie Mac received any such notice.

15

(*Id*. ¶ 12.) He said that pursuant to Freddie Mac's corporate policies, "all legal process served on Freddie Mac is forwarded to the Vice President & Deputy General Counsel, whose assistant logs all such documents"; Lawrence had "contacted this assistant and she had no record of any such documents or file relating to this case." (*Id*. ¶ 13.) Lawrence said he was also informed by other offices in the Freddie Mac legal department that they had not received any documents relating to this case. (*See id*. ¶¶ 14-16, 23.)

Lawrence noted that the district court had ordered that the notice of the Proposed Settlement be sent by first-class mail to reasonably identifiable potential members of the Settlement Class, that Freddie Mac was "well known as one of the largest RMBS purchasers," and that counsel in the present case "had access to . . . data, that would have revealed Freddie Mac's purchase of securities from the[ NovaStar] securitizations and its potential membership in the proposed class." (*Id*. ¶¶ 17-18.) FHFA and Freddie Mac maintained that

> [r]egardless of whether a mailing was made to Freddie Mac, as evidenced above, Freddie Mac *did not receive adequate notice of the Proposed Settlement*, the certification of the settlement class, *and the deadline for Freddie Mac to request exclusion from the settlement class*.

16

(Lawrence Decl. ¶ 19 (emphases added).) Lawrence stated that

> [h]ad Freddie Mac been given adequate notice of the class certification, it would have opted out of the class. Had Freddie Mac been given notice of the Proposed Settlement, it would have requested to be excluded from the settlement.

(*Id*. ¶ 11; *see also id*. ¶ 20 ("Freddie Mac did not receive adequate and timely notice"); *id*. ¶ 21 ("Freddie Mac did not receive adequate and timely notice"); FHFA Objection at 6 (the "failure of the notice procedures denied Freddie Mac the opportunity to" "request[] exclusion from the Settlement Class by the Order's Opt-Out Deadline").)

One day later, on August 31, counsel for FHFA and Freddie Mac sent a letter--by email to counsel for the parties and by certified mail to the Claims Administrator--stating that "[a]t the direction of FHFA, Freddie Mac hereby requests to be excluded from the Settlement Class" (Declaration of Kyle A. Lonergan dated September 11, 2017 ("Lonergan Decl."), ¶¶ 2-4, and Exhibit A thereto).

17

2.  *Rebuttal to FHFA's Claimed Lack of Notice*

Carpenters Health Fund responded to FHFA's lack-of-notice objection to the proposed settlement of this action by, *inter alia*, submitting a supplemental declaration from Claims Administrator project manager Villanova. He described three mailings of opt-out notice packages to Freddie Mac. Two were sent on May 30, 2017, including one to an address that Freddie Mac's website listed as its headquarters. (*See* Declaration of Epiq Project Manager Villanova dated September 6, 2017 ("Villanova Decl. No. 2"), ¶¶ 6, 9.) Neither of those mailings to Freddie Mac was returned to sender. (*See id*. ¶ 7 (those addresses had been used by Epiq for securities litigation mailings to Freddie Mac since 2008, with none ever being returned as undeliverable or requiring forwarding).) A third mailing to Freddie Mac was sent on August 1 at the request of the custodian of Freddie Mac's bonds, to an address that slightly differed from one of the May 30 mailing addresses; that third mailing was returned as undeliverable. (*See id*. ¶¶ 8, 10.)

In addition, plaintiff submitted to the district court lists of numerous news articles reporting on the proposed settlement of the present

action and copies of articles discussing this action at earlier stages. It also presented copies of court papers that had been submitted by FHFA in other cases in 2012 and 2013, in which FHFA called attention to the present action, citing it by name and docket number. (*See* Declaration of plaintiff's counsel Joel P. Laitman dated September 6, 2017, ¶¶ 6-10, and Exhibits D-H, attached thereto.) Plaintiff argued that even if Freddie Mac had not received the two unreturned opt-out notice packages that had been mailed to it, any suggestion that FHFA and Freddie Mac were not aware of the litigation itself or the proposal for its settlement was simply not credible.

3. *FHFA's Admission that Freddie Mac Received the Mailing*

On September 12, 2017, one day before the scheduled Final Approval Hearing, FHFA moved, by order to show cause, for a 45-day stay of that hearing. At the oral argument on the motion, counsel for FHFA and Freddie Mac began by reiterating that "FHFA did not receive notice of the proposed settlement." (Hearing Transcript, September 12, 2017 ("Sept. 12 Tr."), at 3.) After that statement or its equivalent was again repeated or implied

19

(*see*, *e.g.*, *id*. at 25, 35, 38, 39), FHFA's cocounsel finally revealed that Freddie Mac had in fact timely received the notice. He stated that

> Freddie Mac has learned since the filing of its initial papers that a notice was actually received by an individual at Freddie Mac.

(*Id*. at 43.) He stated:

> That individual was in the wire room at Freddie Mac, did not review the notice, did not forward it to anyone, so nobody at Freddie Mac was in fact aware of the exclusion deadline.

(*Id*.)

The district court, while accepting FHFA's factual disclosure, rejected the argument that FHFA or Freddie Mac had been denied timely or adequate notice:

> Now there is no question that notice was received by Freddie Mac in a timely fashion. It was not acted upon by Freddie Mac because someone at Freddie Mac decided not to read it.

(*Id*. at 44.)

FHFA proceeded to urge the court nonetheless to grant its motion for a 45-day stay of the Final Approval Hearing. It had stated earlier that

20

"FHFA and Freddie Mac are not here to blow up the settlement. They're happy for the settlement to go forward. They just want [it] to go forward without them." (*Id*. at 25; *see id*. at 35 ("all we're asking is that we want to be let out of the settlement that we don't want to be a part of").) FHFA pressed two arguments in favor of its motion for a stay.

It stated that in negotiations with Wells Fargo over RMBS since 2011, FHFA and Wells Fargo had entered into "tolling" agreements that barred FHFA, until specified dates, from filing claims with respect to RMBS such as the two NovaStar bonds Freddie Mac had purchased in 2006. FHFA stated that "the provisions of the tolling agreement preclude Freddie Mac from asserting a claim against Wells Fargo. That would include submitting a proof of claim in this case." (*Id*. at 47-48.)

In addition, FHFA argued that its stay motion should be granted because HERA entitles a conservator to move for a 45-day stay and requires the court to grant it, *see* 12 U.S.C. §§ 4617(b)(10)(A)-(B). FHFA's counsel explained that because the May 2017 Order had made the deadline for class members' opt-out notices 28 days before the Final Approval Hearing, FHFA

21

believed that if that hearing were postponed by 45 days, the effect would be to make FHFA's untimely attempt to have Freddie Mac opt out of the Settlement Class timely. (*See*, *e.g.*, Sept. 12 Tr. 45 (the "stay that FHFA is requesting in this case[] would allow a delay in the proceedings that would allow Freddie Mac to submit, already have submitted, a timely exclusion").) FHFA initially suggested that it would be the only beneficiary of such a postponement; but it then conceded that its pantographic-deadline rationale would require that all class members be permitted to submit new--deemed timely--requests to opt out.

The district court denied both FHFA's request for a 45-day adjournment of the Final Approval Hearing and its request to file a belated opt-out notice for Freddie Mac. As to the latter, the court stated:

> Now I will say that . . . *especially since I now know that the objectors did get notice*, had they opted out, none of us would be here today. They did not opt out. Because I do not believe that 12 USC 4617(b)(10)(B) applies here, because the objectors did get notice, because they didn't file in a timely fashion to opt out, they are still in the class.

(Sept. 12 Tr. 50 (emphasis added).) The court did, however, order that the Final Approval Hearing be put off for one week.

The delay of one week ultimately grew into more than a year. FHFA and Freddie Mac immediately appealed from the denial of their motion for a 45-day stay; the district court *sua sponte* delayed the Final Approval Hearing during the pendency of that appeal; and the appeal was not resolved until late 2018. *See New Jersey Carpenters Health Fund v. NovaStar Mortgage, Inc.*, 753 F. App'x 16 (2d Cir. 2018).

By the time the appeal was heard in this Court, we noted, nearly a year had elapsed since the denial of FHFA's request for a stay of 45 days. We thus dismissed the appeal as moot and vacated the district court order denying that relief. *See id*. at 19-21. We also observed that in the district court, "FHFA did not argue . . . that it was seeking a stay because it needed more time to evaluate the proposed settlement agreement. Instead, it argued that granting a stay would make its opt-out request timely." *Id*. at 18. We endorsed the district court's rejection of FHFA's notion that a grant of its requested 45-day stay would reset the clock for expired opt-out-notice deadlines. *See id*. at 20.

D.  *The Final Approval Hearing*

The district court's Final Approval Hearing was finally held in March 2019.  FHFA again argued that § 4617(f) deprived the court of subject matter jurisdiction to include Freddie Mac's assets within the settlement and to enjoin FHFA from pursuing claims related to those assets.  The court rejected the argument.  In a Memorandum and Order dated March 8, 2019 ("March 2019 Order"), the court stated that it

> overruled the Objector's motion, finding that FHFA's duty as a conservator could not "be turned into a sword" and that 12 U.S. Code § 4617(f) did not "divest[] [the Court] of jurisdiction to finalize a settlement in a class action where one of the plaintiffs had slept on his or her rights." (Transcript of Fairness Hearing at 31.)  Finding jurisdiction to finalize the Settlement *with FHFA as a class member* subject to the Settlement's restrictions, the Court DENIED the objection.

March 2019 Order at 6-7 (emphasis added).

The court approved the settlement and entered a final judgment that included the terms that were set out in the proposed judgment accompanying the March 2017 motion for Settlement Class certification.  To the extent pertinent to this appeal, the judgment states as follows:

24

8. The Court has received one objection to the Settlement, submitted by the Federal Housing Finance Agency ("FHFA") in its capacity as conservator of the Federal Home Loan Mortgage Corporation ("Freddie Mac"). *The Court finds and concludes that FHFA and Freddie Mac's objections to the adequacy of notice and interpretation of 12 U.S.C. § 4617(f) (objection to subject matter jurisdiction of Court) are without merit and therefore overrules it in its entirety.*

9. The Action and all claims contained therein are hereby dismissed on the merits with prejudice as to Plaintiffs and the Settlement Class Members. . . .

10. Upon the Effective Date, Plaintiffs and all other Settlement Class Members, on behalf of themselves and any of their . . . successors or assigns, shall be deemed to have, and by operation of this Order and Final Judgment shall have, fully, finally and forever waived, released, relinquished, discharged, and dismissed all Released Claims, with prejudice and on the merits, whether or not such Plaintiff or Settlement Class Member executes and delivers a Proof of Claim Form. Plaintiffs acknowledge, and the Settlement Class Members shall be deemed by operation of law to acknowledge, that the waiver of Unknown Claims, and of the provisions, rights and benefits of § 1542 of the California Civil Code (and any other similar provision of law of any other jurisdiction), was bargained for and is a key element of the Settlement of which the release in this paragraph is a part.

11. Upon the Effective Date, Plaintiffs and all other *Settlement Class Members*, on behalf of themselves and any of their . . . successors or assigns, are forever barred and enjoined from commencing, instituting, prosecuting or

25

continuing to prosecute any action or proceeding in any court of law or equity, arbitration tribunal, administrative forum, or other forum of any kind, asserting any Released Claims, including, without limitation, instigating, voting in favor of or otherwise supporting the assertion of any claim asserting contractual repurchase (or other "putback") rights with respect to any residential mortgage loan included in any of the Offerings other than in any action filed prior to December 20, 2016 asserting such claims.

Final Judgment dated March 13, 2019 (or "Judgment"), ¶¶ 8-11 (emphases added).

This appeal followed.

## II. DISCUSSION

On this appeal, stating that "[s]ection 4617(f) strips federal courts of subject matter jurisdiction to 'restrain or affect' FHFA in its capacity as conservator" (FHFA brief on appeal at 24), FHFA contends principally (1) that § 4617(f) deprived the district court of jurisdiction (a) to apply Rule 23 class action opt-out procedures to Freddie Mac or FHFA, (b) to rule that Freddie Mac and FHFA are members of the Settlement Class and that conservatorship claims at issue in the present case are released by the class action settlement,

and (c) to enjoin FHFA from pursuing such released claims with respect to Freddie Mac's assets; and (2) that FHFA and Freddie Mac were not properly included in the Settlement Class because they were not adequately served with the opt-out notice. FHFA also argues that the court lacked jurisdiction to appoint class counsel to represent FHFA or Freddie Mac as a member of the Settlement Class, an argument that was not made to the district court and that we consider to be waived as well as meritless in the circumstances, without need for further discussion. We conclude that FHFA's other arguments lack merit for the reasons discussed in Parts II.A. and B. below. However, we conclude for the reasons discussed in Part II.C. that the district court erred in ruling that FHFA is a member of the Settlement Class, and the Final Judgment will be modified to clarify that FHFA is not a member of the Settlement Class.

A.  *HERA*

As has been well chronicled, Congress enacted HERA in 2008 to address concern for the financial health of Freddie Mac and the Federal National Mortgage Association (known as "Fannie Mae"), the regulated entities

that are the leading sources of mortgage financing in the United States. *See, e.g., Collins v. Yellen*, 141 S. Ct. 1761, 1770-71 (2021); *FHFA v. UBS Americas Inc.*, 712 F.3d 136, 138 (2d Cir. 2013); *Jacobs v. FHFA*, 908 F.3d 884, 887-88 (3d Cir. 2018); *Roberts v. FHFA*, 889 F.3d 397, 399-400 (7th Cir. 2018); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 598-600 (D.C. Cir. 2017) ("*Perry Capital*"). HERA created FHFA and empowered it not only to adopt appropriate regulations, but also to serve as either a conservator or a receiver of a regulated entity. As the Supreme Court noted in *Collins*, HERA--which refers to FHFA generally as the "Agency"--confers on FHFA

> expansive authority in its role as a conservator. . . . [T]he Agency is authorized to take control of a regulated entity's assets and operations, conduct business on its behalf, and transfer or sell any of its assets or liabilities. See §§ 4617(b)(2)(B)-(C), (G). When the FHFA exercises these powers, its actions must be "necessary to put the regulated entity in a sound and solvent condition" and must be "appropriate to carry on the business of the regulated entity and preserve and conserve [its] assets and property." § 4617(b)(2)(D).

*Collins*, 141 S. Ct. at 1776; *see also id*. at 1772 (FHFA may also "take any authorized action that is in the best interests of the companies or the Agency itself. § 4617(b)(2)(J).").

Many of the cases involving FHFA have challenged either FHFA directives preventing Freddie Mac and Fannie Mae from buying mortgages on properties encumbered by liens to which the regulated entities' mortgages would be subordinated, *see*, *e.g.*, *Town of Babylon v. FHFA*, 699 F.3d 221, 225-27 (2d Cir. 2012); *County of Sonoma v. FHFA*, 710 F.3d 987, 990-92 (9th Cir. 2013); *Leon County, Florida v. FHFA*, 700 F.3d 1273, 1275-77 (11th Cir. 2012), or FHFA sales of Freddie Mac and Fannie Mae stock, and granting of preferred dividends, to the United States Treasury Department in exchange for billions of dollars of emergency capital, *see*, *e.g.*, *Collins*, 141 S. Ct. at 1770; *Jacobs v. FHFA*, 908 F.3d at 888-89; *Roberts v. FHFA*, 889 F.3d at 399-400; *Perry Capital*, 864 F.3d at 598. Such challenges have ultimately been rejected on the ground that the requested relief would violate the HERA provision that

> [e]xcept as provided in this section or at the request of the Director [of FHFA], no court may take any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver,

12 U.S.C. § 4617(f). This subsection (f) is sometimes referred to as HERA's "anti-injunction clause." *See*, *e.g.*, *Collins*, 141 S. Ct. at 1776; *see also Jacobs v. FHFA*, 908 F.3d at 895 (holding that § 4617(f) is sufficiently broad to bar

29

monetary relief, and thus dismissing monetary claims that, if granted, would have unraveled FHFA's agreement with Treasury to obtain needed working capital for Freddie Mac and Fannie Mae, which plainly would "interfere with the Agency's exercise of its powers as conservator").

The present action, in contrast to those described above, involves allegations that the issuance and underwriting of certain NovaStar RMBS sold to numerous purchasers, including Freddie Mac, violated the 1933 Act. The issues on this appeal are principally whether FHFA or Freddie Mac was permissibly found to be a member of the Settlement Class, given that they did not opt out of the Settlement Class; and whether the settlement, which entails compensation for--and release of--the claims of all members of the Settlement Class could properly encompass claims with respect to the NovaStar bonds owned by Freddie Mac. While subsection (f) of § 4617, relied on by FHFA,

> [sweepingly] bars "any" judicial interference with the "exercise of *powers or functions* of the Agency *as a conservator or a receiver*[,]" . . . its scope is not boundless. Section 4617(f) will not protect the Agency if it acts . . . *ultra vires* . . . . That is, for section 4617(f) to bar judicial relief, the Agency must have acted a) pursuant to its "powers or functions" and b) "as a conservator or a receiver."

30

*Roberts v. FHFA*, 889 F.3d at 402 (emphases in original). In other words,

> [t]he anti-injunction clause applies only where the FHFA exercised its "powers or functions" "as a conservator or a receiver." Where the FHFA does not exercise but instead exceeds those powers or functions, the anti-injunction clause imposes no restrictions.

*Collins*, 141 S. Ct. at 1776.

With the scope of § 4617(f) in mind, we look to see what relevant powers HERA confers--or does not confer--on FHFA as a conservator. *See*, *e.g.*, *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 573 (1989) ("in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute" (internal quotation marks omitted)); *Jacobs v. FHFA*, 908 F.3d at 889 ("to figure out whether § 4617(f)" constitutes a "bar[]," "we first identify 'the powers or functions of the Agency as a conservator'").

1. *Powers Conferred on FHFA by HERA § 4617*

Section 4617(b)(2) of HERA provides the following among FHFA's "**General powers**":

31

**(A) Successor to regulated entity**

The Agency shall, as conservator or receiver, and by operation of law, immediately succeed to--

(i) all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director of such regulated entity with respect to the regulated entity and the assets of the regulated entity; and

(ii) title to the books, records, and assets of any other legal custodian of such regulated entity.

**(B)   Operate the regulated entity**

The Agency may, as conservator or receiver--

(i) take over the assets of and operate the regulated entity with all the powers of the shareholders, the directors, and the officers of the regulated entity and conduct all business of the regulated entity;

(ii) collect all obligations and money due the regulated entity;

(iii) perform all functions of the regulated entity in the name of the regulated entity which are consistent with the appointment as conservator or receiver;

(iv) preserve and conserve the assets and property of the regulated entity; and

32

(v) provide by contract for assistance in fulfilling any function, activity, action, or duty of the Agency as conservator or receiver.

12 U.S.C. §§ 4617(b)(2)(A) and (B).

While providing FHFA with "**Additional powers as receiver**" to liquidate a regulated entity, *id*. § 4617(b)(2)(E)--*see* Part II.A.3. below--HERA states that as to FHFA's "**Powers as conservator**,"

> [t]he Agency may, as conservator, take such action as may be--
>
> > (i) necessary to put the regulated entity in a sound and solvent condition; and
> >
> > (ii) appropriate to carry on the business of the regulated entity and preserve and conserve the assets and property of the regulated entity,

*id*. § 4617(b)(2)(D). HERA further provides that with respect to its general powers, FHFA may exercise such incidental powers as are "necessary" for its functioning in the capacity in which it is given general powers:

> **(J) Incidental powers**
>
> The Agency may, as conservator or receiver--
>
> > (i) exercise all powers and authorities specifically granted to conservators or receivers, *respectively*, under

this section, and such incidental powers as shall be necessary to carry out such powers; and

(ii) take any action authorized by this section, which the Agency determines is in the best interests of the regulated entity or the Agency.

*Id*. § 4617(b)(2)(J) (emphasis added).

Finally--notwithstanding the above provisions as to what FHFA "may" do--HERA provides that, with respect to any disposition of the regulated entity's assets, FHFA in its capacity as either conservator or receiver has the obligation to optimize asset value:

**(E) Disposition of assets**

In exercising any right, power, privilege, or authority as conservator or receiver in connection with any sale or disposition of assets of a regulated entity for which the Agency has been appointed conservator or receiver, the Agency *shall* conduct its operations in a manner which--

(i) *maximizes* the net present *value* return from the sale or disposition of such assets; [and]

(ii) *minimizes* the amount of any *loss* realized *in the resolution of cases* . . . .

12 U.S.C. § 4617(b)(11)(E) (emphases added). The word "shall," in a statute, indicates a command; what follows the word "shall" is "mandatory, not

34

precatory." *Mach Mining, LLC v. Equal Employment Opportunity Commission*, 575 U.S. 480, 486 (2015); *see, e.g., Perry Capital*, 864 F.3d at 607.

## 2. *FHFA and Court Actions*

Because FHFA as a conservator automatically succeeds to the rights, powers, and privileges of the regulated entity, FHFA in litigation to which Freddie Mac is a party has all the rights and privileges, etc., to which Freddie Mac would be entitled. In addition, HERA confers on conservators and/or receivers several privileges or advantages that the regulated entity did not have.

For example, in new or ongoing litigation to which a regulated entity will be or is a party, HERA potentially lengthens the statutes of limitations for claims by FHFA, whether as conservator or as receiver. *See, e.g.,* 12 U.S.C. § 4617(b)(12)(A) (limitations periods are to be the longer of six years or an applicable state-law period for a contract claim, and the longer of three years or an applicable state-law period for a tort claim). In addition, HERA provides generally that such a claim cannot be deemed to have accrued before the date on which FHFA was appointed conservator or receiver. *See id.*

§ 4617(b)(12)(B). It further allows FHFA to revive certain expired state-law claims of fraud or intentional tort, *i.e.*, to bring suit if the state statute of limitations on such a claim expired less than five years before FHFA was appointed conservator or receiver. *See id*. § 4617(b)(13).

With respect to ongoing litigation involving a regulated entity, HERA gives FHFA a right to request a stay of all proceedings for a maximum of 45 days if FHFA is a conservator or a maximum of 90 days if it is a receiver. *See* 12 U.S.C. § 4617(b)(10)(A). And, as discussed more fully in Part II.A.4. below, HERA generally requires the court to grant one such request, *see id*. § 4617(b)(10)(B).

Section 4617(b) also provides that "[t]he Agency shall abide by any final unappealable judgment of any court of competent jurisdiction which was rendered before the appointment of the Agency as conservator or receiver." 12 U.S.C. § 4617(b)(11)(A). But it provides that as to

> any appealable judgment, the Agency as conservator or receiver--
>
> > (i) shall have all of the rights and remedies available to the regulated entity (before the appointment of such conservator or receiver) and the

36

Agency, including removal to Federal court and all appellate rights.

*Id*. § 4617(b)(11)(B)(i). And in order to appeal in either capacity, FHFA is not required to post a bond. *See id*. § 4617(b)(11)(B)(ii).

HERA also allows a conservator or receiver to ask the court to issue an attachment or an injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure without the usual need to show imminent irreparable injury. *See id*. §§ 4617(b)(16) and (17). On the other hand, HERA provides that no court may issue "attachment or execution . . . upon assets in the possession *of the receiver*." *Id*. § 4617(b)(11)(C) (emphasis added).

3. *Additional Differences Between Conservator and Receiver*

As just indicated, HERA confers some powers or privileges on FHFA only in its capacity as a receiver. "The roles of conservator and receiver are very different," given that "when the FHFA acts as a conservator, its mission is rehabilitation"; in "contrast, when the FHFA acts as a receiver, it is required to 'place the regulated entity in liquidation and proceed to realize

37

upon the assets of the regulated entity.' § 4617(b)(2)(E)." *Collins*, 141 S. Ct. at 1776 & n.12.

Accordingly, after stating in § 4617(b)(2)(D) that FHFA "as conservator" may take such actions as may be necessary and appropriate to rehabilitate the regulated entity's finances and carry on its business, HERA states that FHFA has "**Additional powers as *receiver***":

> In any case in which the Agency is acting *as receiver*, the Agency shall place the regulated entity in liquidation and proceed to realize upon the assets of the regulated entity in such manner as the Agency deems appropriate, including through the sale of assets, . . . or the exercise of any other rights or privileges granted to the Agency under this paragraph.

12 U.S.C. § 4617(b)(2)(E) (emphases added). And while HERA provides that with respect to the disposition of assets FHFA as either a conservator or a receiver is required to optimize the value of the regulated entity's assets, *see id.* § 4617(b)(11)(E), it provides that, except as otherwise provided in subsection (b),

> *no court shall have jurisdiction over--*

> (i) . . . *any action seeking a determination of rights with respect to[] the assets . . .* of any regulated entity for which the Agency has been appointed *receiver . . . .*

12 U.S.C. § 4617(b)(11)(D)(i) (emphases added). HERA contains no such provision to preclude court jurisdiction over an action seeking a determination with respect to the assets of a regulated entity for which FHFA has been appointed conservator.

HERA also provides that some claims may be determined by FHFA as receiver administratively, *see id*. § 4617(b)(3) ("**Authority of receiver to determine claims**"); *id*. § 4617(b)(5)(D) ("**Authority to disallow claims**"), although some claims may be pursued in court actions, *see id*. § 4617(b)(6) ("**Provision for judicial determination of claims**"). When a claim is disallowed in whole or in part by FHFA as receiver because it "is not proved to the satisfaction of the receiver," *id*. § 4617(b)(5)(D), the receiver's decision is immune from judicial review:

> **(E)** *No judicial review* **of determination pursuant to** *subparagraph (D)*
>
> No court may review the determination of the Agency under *subparagraph (D)* to disallow a claim.

12 U.S.C. § 4617(b)(5)(E) (emphases added). Subparagraph (D) refers to FHFA only in its capacity as a "receiver." *Id*. § 4617(b)(5)(D).

While the above HERA provisions in § 4617(b)(11)(D)(i) and § 4617(b)(5)(E) preclude judicial consideration of the specified categories of FHFA's decisions as a receiver, HERA contains no such express denial of judicial review or jurisdiction with respect to any decision by FHFA as a conservator. FHFA's challenges to the court's power to include Freddie Mac's claims in the present class action rest solely on FHFA's invocation of § 4617(f)'s general prohibition against the court's "tak[ing] any action to restrain or affect the exercise of powers or functions of the Agency as a conservator or a receiver."

4. *The Import of HERA's Empowering FHFA To Obtain a Stay*

As indicated in Part II.A.2. above, with regard to ongoing litigation involving a regulated entity, HERA gives FHFA authority to seek--and requires the court to grant--a temporally limited stay of the proceedings. Section 4617(b)(10), titled "**Suspension of legal actions**," provides as follows:

> **(A) In general**
>
> After the appointment of a conservator or receiver for a regulated entity, *the conservator or receiver may, in any*

40

*judicial action or proceeding to which such regulated entity is or becomes a party, request a stay* for a period not to exceed--

> (i) 45 days, in the case of any conservator; and

> (ii) 90 days, in the case of any receiver.

**(B) Grant of stay by all courts required**

> Upon receipt of a request by the conservator or receiver under subparagraph (A) for a stay of any judicial action or proceeding in any court with jurisdiction of such action or proceeding, *the court shall grant such stay* as to all parties.

12 U.S.C. § 4617(b)(10) (emphases added).

Subparagraph (A) clearly specifies the maximum duration of the stay that FHFA as a conservator or as a receiver may request; and subparagraph (B) states clearly that the court must grant the requested stay. Paragraph (b)(10) thus gives FHFA the power to obtain a stay; it envisions a mandatory stay. Other aspects of the section, such as whether Congress meant to allow the conservator or receiver to make more than one request for a mandatory stay, whether the court would be required to grant more than one such request, and whether the request was to be made soon after appointment or instead could be made at any time during the pending litigation, are less

clear, and the legislative history of HERA in this respect is sparse. However, that history helpfully stated that HERA's "conservatorship and receivership provisions were modeled after similar provisions" that govern the Federal Deposit Insurance Corporation ("FDIC") "in the Federal Deposit Insurance Act." House of Representatives Committee on Financial Services, H.R. Rep. No. 110-142, at 90 (2007).

When Congress was fashioning HERA, the Federal Deposit Insurance Act ("FDI Act") had most recently been amended by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. No. 101-73, § 212, 103 Stat. 222. The FDI Act, as amended by FIRREA, provided--and still provides, in a section titled "**Suspension of legal actions**"-- that "[a]fter the appointment of a conservator or receiver for an insured depository institution, the conservator or receiver may request a stay for a period not to exceed[] (i) 45 days, in the case of any conservator; and (ii) 90 days, in the case of any receiver," 12 U.S.C. § 1821(d)(12)(A); and it provides that such a request must be granted by the court, *see id*. § 1821(d)(12)(B). Thus, HERA's mandatory stay provision in § 4617(b)(10), except for referring

42

to regulated entities instead of insured depository institutions, is virtually identical to FIRREA's mandatory stay provision in § 1821(d)(12). And "where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute." *Lorillard v. Pons*, 434 U.S. 575, 581 (1978).

The legislative history leading to FIRREA's inclusion of the mandatory stay provision provides some enlightenment with regard to Congress's intent as to the less fully articulated contours of the right of a conservator or receiver, after being so appointed, to have a mandatory stay of pending litigation, and as to the need to provide for such a right.

As to whether a conservator or receiver could request a stay more than once, the phrasing in the FIRREA section--*i.e.*, that the FDIC may request "a" mandatory stay, 12 U.S.C. § 1821(d)(12)(A)--appears to authorize only a single such request. This interpretation is consistent with the intent stated in the Senate on the day it passed its version of the legislation that would lead to FIRREA. Bill cosponsors Senators Garn and Riegle, referring to the bill

43

section that set out "*the right of the FDIC to seek and obtain* a stay against judicial actions," explained that "*[s]tays* under [that] section *are not by the terms of the statute subject to extension or renewal.*" 135 Cong. Rec. S4291 (daily ed. April 19, 1989) (emphases added). The record of that debate does not indicate that any Senators dissented from that view of FIRREA's proposed mandatory stay provision. And the legislative committee reports leading to FIRREA's enactment do not suggest that the House held any different view.

Indeed, the reports reveal that there was only a slight substantive difference between the House and Senate bills' proposals for FIRREA's mandatory stay provision. Each bill provided that the conservator or receiver could make the stay request; each mandated that the court grant the requested stay; and each provided, for conservators and receivers alike, a maximum length for the mandatory stay. The difference between the bills was that the Senate set the maximum permissible length of the stay at 45 days, whereas the House set it at 90 days. *See* H.R. Rep. No. 101-54, pt. 1, at 416 (1989); S. Rep. No. 101-19, at 314 (1989). After conference committee proceedings, the final

44

stay provision, as indicated above, allowed a maximum of 45 days for a conservator and a maximum of 90 days for a receiver.

The fact that the bills in each house of Congress included a section that allowed the FDIC after being appointed a conservator or a receiver to ask the court to grant a stay, and that required the court to grant the request, showed that the House and the Senate were of a single mind as to the need to assure the availability of a stay.

Although early legislative reports discussing the proposed mandatory stay provision generally assumed that the conservator or receiver appointed for the relevant financial institutions would be the FDIC, FIRREA ultimately created a new agency, Resolution Trust Corporation ("RTC"), to serve as conservator or receiver of troubled savings and loan institutions for the three-year period following FIRREA's enactment, *see* Pub. L. No. 101-73, § 501(a), 103 Stat. 369; *see also* Pub. L. No. 103-204, 107 Stat. 2369 (1993) (RTC's term extended to six years; its existence terminated in 1995). RTC attributed FIRREA's mandatory stay provision to

> Congress['s] recogni[tion of] the monumental task before RTC
> and the disarray that, as receiver of a failed thrift, it was

likely to face. In choosing mandatory language and divesting the court of discretion, . . . Congress decided that RTC should not be distracted from the pressing responsibilities of reorganizing a failed thrift by the need to litigate on a case-by-case basis its entitlement to a stay . . . .

*Praxis Properties, Inc. v. Colonial Savings Bank, S.L.A.*, 947 F.2d 49, 65 (3d Cir. 1991). *See also id*. at 70-71 (concluding--in light of Congress's determination to give the conservator or receiver "breathing room" to attack the disarray of a failed thrift institution--that the "[a]fter the appointment of a conservator or receiver" clause in FIRREA's mandatory stay provision, 12 U.S.C. § 1821(d)(12), was intended also to limit to 45 (or 90) days the period within which the conservator (or receiver) was allowed to make the stay request); *Damiano v. FDIC*, 104 F.3d 328, 334 (11th Cir. 1997) (same); *Whatley v. RTC*, 32 F.3d 905, 908-09 & n.18 (5th Cir. 1994) (same: "[o]therwise, the receiver would have carte blanche to stay a judicial proceeding at any time it feels it needs a 90-day break from the rigors of litigation" (internal quotation marks omitted)).

Given that HERA's mandatory stay provision, § 4617(b)(10) ("**Suspension of legal actions**"), was modeled after the FDI Act's identically titled § 1821(d)(12), and given the compelling financial industry concerns that

impelled Congress to enact FIRREA and HERA, we infer that the HERA Congress, like the FIRREA Congress, intended the mandatory stay provision to afford the conservator or receiver an interval in which it could devote its attention more fully to the entity in question rather than dealing with judicial orders and deadlines in pending court litigation. We also infer that HERA's § 4617(b)(10), like FIRREA's § 1821(d)(12), is properly interpreted as authorizing the conservator to make just one request for the mandatory stay. FHFA apparently does not contend otherwise. At the hearing on its stay motion in this case, its counsel described the mandatory stay authorization as "a one-time deal." (Sept. 12 Tr. 39.)

Further, it seems clear that Congress's intent to have HERA empower FHFA to obtain the mandatory stay was predicated on the recognition that FHFA, after becoming a conservator or receiver for a regulated entity in litigation, would normally, as a litigant, be subject to court orders and deadlines. And Congress's manifested intent to limit FHFA to a single request for a mandatory stay demonstrates not only Congress's recognition that except during the period encompassed by such a single mandated stay FHFA would

likely be subject to additional court orders and deadlines, but also its intent not to relieve FHFA of those normal litigation obligations.

Thus, the very fact that Congress found it advisable to make provision for a mandatory stay, and the fact that it determined to limit the authorization to a single request for such a stay, refute FHFA's contention that "HERA Section 4617(f) automatically deprives any district court of subject matter jurisdiction to 'restrain or affect' FHFA in its capacity as conservator" (FHFA brief on appeal at 39). If, as FHFA contends, Congress had intended FHFA to have carte blanche to proceed at its own pace--or to refuse to proceed--in disregard of court orders or deadlines, there would have been no need for HERA to provide a "**Suspension of legal actions**" section at all.

FHFA's contention that the court was barred from "restrain[ing] or affect[ing] FHFA in its capacity as conservator" confuses FHFA's capacity--here it is a conservator--with its powers in that capacity. Section 4617(f) focuses instead on FHFA's powers and functions; as *Collins* noted, "[w]here the FHFA does not exercise but instead exceeds [its] powers or functions [as a conservator], the anti-injunction clause imposes no restrictions." 141 S. Ct. at 1776.

48

In sum, given the existence and purpose of HERA's mandatory stay provision, and the lack of any authorization for FHFA to otherwise alter or disregard court orders or deadlines, we reject FHFA's contention that § 4617(f) deprived the district court of jurisdiction in this case to enforce the deadline for Freddie Mac to opt out of the Settlement Class.

FHFA also argues that "Rule 23's notice-and-opt-out procedure simply did not apply to FHFA and Freddie Mac due to HERA Section 4617(f)" (FHFA brief on appeal at 43); but it cites nothing to support that proposition except its own view, and we see nothing to endorse it. While HERA, as illustrated in Part II.A.2. above, contains a number of provisions that, for the benefit of FHFA as a conservator or a receiver, alter the normal parameters for various actions, remedies, or procedures such as statutes of limitations, or attachments, or prerequisites for obtaining injunctive relief, HERA contains no provision limiting the scope or availability of class actions.

Throughout, when referring to litigation to which FHFA or Freddie Mac is or may become a party, § 4617 generally mentions simply courts, judicial actions, or legal actions. And when it provides that FHFA "*shall*

conduct its operations in a manner which . . . minimizes the amount of any *loss realized in the resolution of cases*," 12 U.S.C. § 4617(b)(11)(E)(ii) (emphases added), it does not purport to limit the nature of the cases or the structure of the proceedings in which the conservator or receiver can lose. It does not suggest that the court could not rule against FHFA in a class action. HERA nowhere mentions class actions.

And if FHFA believed that it could receive greater value by pursuing Freddie Mac's present claims elsewhere, its failure to have Freddie Mac timely opt out of the present action constituted a breach of FHFA's obligation to conduct its operations in a manner that would "minimize the amount of . . . loss realized in the resolution of [this] case[]," 12 U.S.C. § 4617(b)(11)(E)(ii), rather than an exercise of FHFA's powers.

Accordingly, as nothing in HERA empowered FHFA to disregard the opt-out deadline with impunity, § 4617(f) did not bar the district court's denial of FHFA's motion to excuse the untimeliness.

B. *Challenges to the Notice, and Various Other Contentions*

FHFA also contends that the Judgment could not properly include the claims of Freddie Mac in the class settlement because, it maintains, FHFA itself was not given notice of the proposed settlement and did not affirmatively consent to the settlement or to Freddie Mac's being a member of the Settlement Class. FHFA's various challenges to the adequacy and efficacy of notice are meritless.

"The adequacy of class notice is reviewed for abuse of discretion." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006).

> "A district court has 'abuse[d] its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence,' *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 . . . (1990), or rendered a decision that 'cannot be located within the range of permissible decisions,' *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 169 (2d Cir.2001)." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008).

*CFTC v. Walsh*, 712 F.3d 735, 749-50 (2d Cir. 2013). In considering whether there has been an abuse of discretion, we review the district court's rulings of law *de novo* and review its factual findings for clear error. *See, e.g., id*. We see no error or abuse of discretion here.

51

First, despite the many denials by FHFA and Freddie Mac that Freddie Mac had ever received notice of the proposed settlement, they ultimately admitted that the notice was in fact received by someone in Freddie Mac's offices (*see* Parts I.C.2. and 3. above). Notwithstanding that factual admission, FHFA continued to attempt to deny that the notice had been received by Freddie Mac. The district court properly accepted the factual admission of receipt; and there is no basis for concluding that the court erred in ruling that the notice was received by Freddie Mac itself. *See, e.g., Manhattan-Ward, Inc. v. Grinnell Corp.*, 490 F.2d 1183, 1185-86 & n.2 (2d Cir. 1974) (affirming denial of request to excuse an opt-out attempt's untimeliness where notice of the proposed class settlement had been properly mailed to the absent class member's corporate headquarters and there was no denial that it had been received in the mail room; the notice was sufficient even if "the mailed notice did not reach any responsible officer of the company").

Second, we see no error in the district court's legal ruling that receipt of notice by Freddie Mac--operating under FHFA, which by then had been its conservator for nearly a decade--constituted receipt of notice by FHFA.

As FHFA itself reiterates, upon its appointment as Freddie Mac's conservator FHFA by operation of law had immediately "succeeded to" all of Freddie Mac's rights, privileges, titles, assets, books, and records (*e.g.*, FHFA brief on appeal at i, 4, 9, 26-27). By insisting that despite receipt of the notice by Freddie Mac with FHFA as its conservator "FHFA" was "not provide[d]"--was "not served"-- with the notice (*id*. at 11, 43), FHFA simply seeks to deny the usual consequences of succession. *See generally O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) ("language" that an agency "'shall, . . . by operation of law, succeed to . . . all rights, titles, powers, and privileges of the [regulated] institution'" (quoting 12 U.S.C. § 1821(d)(2)(A)(i)), normally "appears to indicate that the" agency "steps into the shoes" of that institution (other internal quotation marks omitted)). Similarly, FHFA attributes any mishandling of the notice, which Freddie Mac admits receiving, to the "purported action or inaction of *another*" (FHFA brief on appeal at 44 (emphasis added)), in disregard of the fact that in the conservatorship Freddie Mac was under FHFA's supervision and control. And FHFA even argues that "*Freddie Mac's*" belated "service of its [opt-out] request . . . cannot restrict *FHFA's*

conservatorship powers" (*id*. at 43 (emphases added; capitalization omitted)), when in fact that belated opt-out attempt stated that "Freddie Mac hereby requests to be excluded from the Settlement Class" "*[a]t the direction of FHFA*" (Exhibit A to Lonergan Decl. (emphasis added)). We see no error in the district court's rejection of FHFA's attempts to distance itself from Freddie Mac while being its conservator.

FHFA's other procedural challenges are similarly unpersuasive. Although FHFA contends that in order to have "jurisdiction" to include Freddie Mac in a class action the district court was required to obtain the FHFA Director's "explicit" "affirmative" "consent" (FHFA brief on appeal at 1, 23, 31), it again provides no HERA cite for such a proposition other than its own gloss on the general language in § 4617(f), and we have found no relevant provision in HERA requiring FHFA's affirmative consent for any such action by the court. *See generally Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (as to class actions seeking to bind known plaintiffs with respect to claims wholly or predominantly for money judgments, the court need not provide an

54

"opt-in" procedure; the opportunity for an absent class member to opt out of the litigation is sufficient to protect its right to due process).

FHFA's further contention that the district court premised "subject matter jurisdiction" on Rule 23 (FHFA brief on appeal at 41) is a distortion of the record. The court had subject matter jurisdiction over the action under 28 U.S.C. § 1331 because the complaints asserted claims, on behalf of each individual member of the class, that the defendants violated federal securities laws, in particular the 1933 Act. What FHFA claims to challenge is the scope of the court's power to follow class action procedures and order certain relief, *i.e.*, the authority to include Freddie Mac's federal securities claims in the class action settlement; what FHFA actually objects to--without merit, for the reasons stated in Part II.A.4. above--is the power of the court to impose and enforce deadlines.

The district court did not force Freddie Mac to remain in the Settlement Class. As FHFA was given ample notice and an opportunity to have Freddie Mac opt out of the class action, and as HERA contains no provisions excluding cases conducted as class actions, HERA did not give

FHFA the power to have Freddie Mac excuse itself from the action without opting out. Section 4617(f) did not apply.

C. *Modification of the Judgment*

FHFA's notice of appeal challenged the Final Judgment and "interlocutory rulings or orders merged therein" including "the March 8, 2019 Memorandum and Order." As described in Part I.D. above, in that order the district court stated that it had "finalize[d] the Settlement with FHFA as a class member subject to the Settlement's restrictions." March 2019 Order at 7. In so stating, the district court erred.

The Settlement Class, as certified by the district court, consists of persons and entities who purchased or otherwise acquired interests in the NovaStar bonds "prior to May 21, 2008." *May 2017 Preliminary Class Settlement Order* ¶ 3. Because FHFA did not succeed to the interests of Freddie Mac until September 6, 2008, it acquired no interest in Freddie Mac's NovaStar bonds until that date. FHFA thus is not a member of the Settlement Class.

Although the Judgment describes the district court's March 8 rejection of the notice and subject matter jurisdiction challenges by Freddie Mac and by FHFA as conservator to the settlement, *see* Final Judgment ¶ 8 (quoted in Part I.D. above), the Judgment itself contains no other references to "FHFA" or the "conservator"; and it does not state that FHFA is a member of the class. Nonetheless, given that in its March 2019 Order, five days before entry of the Final Judgment, the court stated that FHFA was a member of the class, and given that the Judgment governs rights and duties of the Settlement Class members, we conclude that the Judgment should be amended to clarify that FHFA is not a class member.

Accordingly, the end of paragraph 8 of the Final Judgment is amended to include the following sentence:

> FHFA, which succeeded to the interests of Freddie Mac in September 2008, is not a member of the Settlement Class; that class is defined as persons or entities who [inter alia] "purchased or otherwise acquired . . . interests in [the specified NovaStar Offerings] prior to May 21, 2008."

The district court is directed to enter an Amended Final Judgment with that clarification inserted.

57

D.  *Summary*

In sum, FHFA had been Freddie Mac's conservator since September 2008 and was aware of this pending class action.

The court-approved notice allowing Freddie Mac to opt out of the Settlement Class in this action by August 16, 2017, was sent to Freddie Mac by first-class mail in May 2017, and it was received by Freddie Mac.

Receipt of that notice by Freddie Mac constituted receipt by FHFA as its conservator, which by operation of law had succeeded in September 2008 to all of Freddie Mac's rights, privileges, assets, books, and records, etc.

FHFA did not have Freddie Mac attempt to opt out of the present class action until after the August 16, 2017 deadline had passed.

HERA, which in 12 U.S.C. § 4617(b)(10), gives FHFA as conservator of a regulated entity in an action to which that entity is a party, a right to request of the court and to be granted a limited stay of the action, does not otherwise grant FHFA any power to affect court deadlines; and the fact that Congress found it important to include § 4617(b)(10) at all reveals that FHFA did not otherwise have the power to alter--or to disregard--court deadlines.

The district court's denial of FHFA's request to excuse the untimeliness of Freddie Mac's opt-out attempt thus did not violate 12 U.S.C. § 4617(f) because that denial did not restrain or affect any right or power granted to FHFA.

For the reasons stated in Part II.C., the Judgment, which governs rights and obligations of members of the plaintiff class, should make clear that FHFA, given the court's definition of that class, is not a member of the class.

CONCLUSION

We have considered all of FHFA's arguments on this appeal and, for the reasons stated in Parts II.A. and B. above, have found them to be without merit. Having determined for the reasons stated in Part II.C. that the Final Judgment may be read as incorporating an error made in the district court's immediately preceding March 2019 Order, we direct the district court to enter an Amended Final Judgment with the clarifying sentence inserted as indicated in Part II.C.

As thus modified, the Judgment is affirmed.